LOUIS MENDELSSOHN, APPELLEE, V. WILLIAM H. CHRISTIE ET AL., APPELLEES, IMPLEADED WITH BRAD D. SLAUGHTER, APPELLANT.

FILED APRIL 21, 1898. No. 8007.

Mortgages: FORECLOSURE: DEFICIENCY JUDGMENT: EVIDENCE. The evidence in this case examined, and found insufficient to sustain the judgment of the district court.

APPEAL from the district court of Douglas county. Tried below before DUFFIE, J. *Reversed.*

*L. H. Kent*, for appellant.

*Kennedy & Learned* and *C. W. Young*, contra.

RYAN, C.

The record submitted in this case begins with a decree entered in the district court of Douglas county for the

foreclosure of two mortgages made by William H. Christie and Sarah M. Christie, each securing payment of a promissory note for $5,000. The property by this decree required to be sold was lots 8 and 9, block 16, in Kountze Place, an addition to the city of Omaha. Brad D. Slaughter was a defendant in this action, and in the decree aforesaid it was found that about April 15, 1891, he, the said Slaughter, for a good and sufficient consideration, had assumed and agreed to pay the amounts secured by said mortgages. This decree was entered October 24, 1894. At the same term of court, and after the entry of said decree, the record recites that this cause came on to be heard on the application of Brad D. Slaughter to modify the decree in so far as it had found him personally liable for the mortgage debt, and thereupon it was ordered that the finding of such personal liability should be stricken from said decree. Following the above order there was in the journal entry this language: "It is further ordered and decreed that the question of the liability of the defendant Brad D. Slaughter for said debt be reserved and held for decision on such evidence as may be presented by the parties upon a motion for a deficiency judgment herein." After the above modification of the terms of the decree there was issued an order of sale, under which the mortgaged property was sold. After confirmation of the sale there was filed a motion for a deficiency judgment against William H. Christie, Sarah M. Christie, and Brad D. Slaughter in the sum of $4,081, the amount of the mortgage debt not satisfied by the sale previously confirmed. Upon a hearing of this motion there was an order sustaining it, and, on a finding that Brad D. Slaughter had assumed the payment of said debt, there was a judgment against him for the amount of the deficiency above recited, with interest thereon. The appeal of Brad D. Slaughter is from this deficiency judgment against him.

The appellee Mendelssohn in the first place contends that there can be no review of the correctness of the judg-

ment appealed from because the record recites that the deficiency judgment was rendered upon consideration of the pleadings and the evidence in the case, and as there is in this record no transcript of the pleadings, it is argued that it is presumable that in the petition or cross-petition in the district court there may have been an averment that defendant Slaughter had assumed payment, and that by his failure to controvert this allegation its truth was admitted. To this contention it is proper to answer that we do not feel justified in presuming that there may have been in the petition or cross-petition the averments indicated, in view of the fact that after findings in the decree consistent with this assumption these findings, on the simple suggestion of Slaughter, were stricken out and it was thereupon expressly ordered that the question of Slaughter's liability should be determined on the motion for a deficiency judgment against him when it afterwards should be filed. Again the default of Slaughter did not admit any definite amount to be due from him. (Code of Civil Procedure, sec. 134; *Campbell v. Brosius*, 36 Neb. 792.) By these considerations it is rendered necessary to consider the evidence contained in the bill of exceptions in determining whether or not Slaughter was properly held personally liable.

In the deed whereby William H. Christie and wife conveyed lots 8 and 9, in block 16, Kountze Place, to Brad D. Slaughter it was recited that the conveyance was subject to the mortgages above referred to, and these mortgages were excepted from the covenant against incumbrances. This deed was dated April 18, 1891. It was preceded by a written agreement of date April 15, 1891, whereby the terms on which the conveyance to be made from Christie and his wife to Slaughter were defined between said Christie and said Slaughter. By this agreement an exchange of real property was provided for in effect as follows: Lots 8 and 9 aforesaid, owned by Christie, were valued at $12,500 and were to be

conveyed to Slaughter free from incumbrance except the above mortgages for security of $10,000, and even of this $10,000 Slaughter was required to pay $1,000. This $1,000, it seems from the evidence, he at once paid. All other liens than the balance of $9,000 on lots 8 and 9 were to be paid by Christie. In consideration of the above conveyance to him Slaughter agreed to convey to Christie lot 4, block 34, in Kountze Place, at a valuation of $6,500, subject to installments of unpaid purchase-money on an executory contract aggregating $4,860 in amount. Slaughter was also to pay Christie $800 in cash and from the evidence it seems this payment was duly made. If from the agreed valuation of the property to be conveyed by Christie, $12,500, there is deducted the incumbrance of $10,000, there remained what, in common parlance, is called an equity, which is equal to $2,500 in value. If from the agreed valuation of the property to be conveyed by Slaughter, $6,560, there is deducted the incumbrance thereon, $4,860, there is found to exist a so-called equity of the value of $1,700, which, added to the $800 cash paid by Slaughter, indicates that these parties were merely exchanging what are ordinarily called equities. It is true that there was proof that after Slaughter received the conveyance of lots 8 and 9 he paid interest and taxes thereon as they became due, but this was perfectly consistent with the idea that he was hoping that the so-called equity might some day be of value to him. On each note secured by mortgage there was an undated memorandum that payments of $500 would be received by the payee at any time, but this is in harmony with Slaughter's theory. When the executory contract was entered into he agreed to make two of these payments at once, and it is not in conflict with this theory to admit, as Slaughter admitted in his testimony, that he would not have gone into an agreement to make a payment of a part of a note before its maturity without knowing that the payee would receive it when tendered. There was not sufficient evidence to

render Slaughter personally liable and the judgment of the district court is therefore

REVERSED.